NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREM TADROS, <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, *et al.*, <br><br> Respondents | No. 25cv4108 (EP) <br><br> **MEMORANDUM AND ORDER TO SHOW CAUSE** |

**PADIN, District Judge.**

This matter comes before the Court on Petitioner Karem Tadros's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, D.E. 1 ("Petition") and several exhibits thereto where he asserts six causes of action that challenge his immigration detention and the Government's failure to identify a lawful path to remove him from the United States following his long-standing deferral of removal to Egypt under the Convention Against Torture[1] ("CAT"). D.E. 1-1–1-7. Respondents oppose the Petition. D.E. 7 ("Answer"). In his Reply Memorandum in Support of Petition for Writ of Habeas Corpus, Tadros voluntarily dismisses without prejudice his claims related to unlawful removal (the Second, Third and Fourth Causes of Action in the Petition). D.E. 8 ("Reply Brief").

Having reviewed the Petition, Answer, and Reply Brief, along with their supporting documents, the Court will schedule a hearing where Respondents shall **SHOW CAUSE** why the Court should not grant the Petition and order Tadros released under appropriate conditions of supervised release.

---

[1] 8 C.F.R. § 1208.17(a) Deferral of removal under the Convention Against Torture.

I.  **BACKGROUND**

Tadros is a native and citizen of Egypt who was admitted to the United States on or about March 17, 1989, and adjusted his status to a derivative asylee on September 11, 1998.  D.E. 7-1, Answer, Declaration of Alexander Cabezas[2] ¶ 3 ("Cabezas Decl.")  On August 18, 2006, Tadros was convicted of the offense of manufacturing, distributing, and dispensing a controlled substance, oxycodone, in violation of N.J. Stat. Ann. §§ 2C:35-5A(1) and 5B(5).  *Id.* ¶ 4.  He was taken into ICE custody on March 20, 2008.  *Id.* ¶ 5.  In December 2008, an immigration judge ordered Tadros removed but also granted him deferral of removal to Egypt under CAT.  *Id.* ¶ 6.  The Board of Immigration Appeals ("BIA") affirmed that decision on April 7, 2009, making Tadros's removal order final.  *Id.* ¶ 7.  Two days later, on April 9, 2009, Tadros was released from ICE custody under an order of supervision.  *Id.*

Tadros remained in compliance with his supervision conditions.  Petition ¶ 21.[3]  Nonetheless, on May 7, 2025, ICE took Tadros into custody and detained him in Elizabeth Contract Detention Facility.  *Id.* ¶ 5.  Tadros was then served with Form I-229(a) (Warning for Failure to Depart) and "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal."  *Id.* ¶¶ 9, 10.  He was also served with Form I-200 (Warrant for Arrest of Alien).  *Id.*  Tadros refused to

---

[2] Alexander Cabezas is "a Supervisory Detention and Deportation Officer ("SDDO") with the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, Newark Field Office [whose] duties as SDDO include *oversight of detention operations* at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey."  Cabezas Decl. ¶ 1 (emphasis added).  Based on this representation, the Court will assume Cabezas is Tadros's immediate custodian, with the power to produce Tadros if a petition for writ of habeas corpus issues.  "For cases arising under § 2241, a district court evaluates its jurisdiction at least in part based on a proper application of the immediate custodian rule."  *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445 (3d Cir. 2021).  The logic of [the immediate custodian rule] rests in an understanding that the warden . . . has day-to-day control over the prisoner and who can produce the actual body."  *Id.* at 444 (cleaned up).
[3] Tadros submitted a declaration, signed under penalty of perjury, in support of his Petition.  D.E. 3-1, Declaration of Karem Tadros.

2

sign all forms. Cabezas Decl., Ex. A-D. He remains in ICE custody at the Elizabeth Detention Facility in New Jersey, four weeks after his arrest. Reply Brief at 5. Based on a May 9, 2025 news report of detained migrants waiting for legal intervention while on a bus destined for a military plane scheduled to remove them to Libya, Tadros fears his immediate removal to a third country without due process. Petition, Ex. F. According to Respondents "[b]ased on Petitioner's final removal order, ICE has been making efforts to facilitate Petitioner's removal to a country other than Egypt. Petitioner will be provided notification as required by the preliminary injunction currently in effect in *D.V.D. v. U.S. Department of Homeland Security*" No. 25-10676-BEM, 2025 WL 1142968, at *24 (D. Mass. Apr. 18, 2025), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), *and opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1495517 (D. Mass. May 26, 2025).[4] *Id.* ¶ 11.

Tadros now presses his first and fifth causes of action and seeks release from detention pursuant to 28 U.S.C. § 2241. Petition ¶¶ 27-29, ¶¶ 40-41. He asserts his "90-day statutory removal period and six-month presumptively reasonable period for continued removal efforts have long passed, and there is no significant likelihood of [his] removal in the reasonably foreseeable future" rendering his continued detention impermissible under 8 U.S.C. § 1231(a). *Id.* ¶¶ 41-42.

Respondents oppose relief on Petitioner's first and fifth causes of action based on: (1) lack of jurisdiction pursuant to 8 U.S.C. § 1252(b)(9), (g); (2) the 90-day removal period may be tolled under 8 U.S.C. § 1231(a)(1)(C) if the alien refuses in good faith to make timely application for travel or other documents necessary for removal; and because (3) Tadros's detention for less than

---

[4] An appeal has been filed before the U.S. Supreme Court. *Dep't of Homeland Sec., et al., Applicants v. D.V.D., et al.*, 24A1153.

six months pursuant to a final order of removal is lawful. Answer at 9-18. In his Reply Brief, Tadros asserts that Respondents, at no time before his arrest on May 7, 2005, asked him to take any specific steps in support of his removal. Reply Brief ¶ 4. After his arrest, he was not served with a "Notice of Failure to Comply" pursuant to 8 C.F.R. § 241.4(g)(5)(ii), nor has he been interviewed pursuant to 8 C.F.R. § 241.4(l)(1) (notification of violation of supervised release). *Id.* ¶ 5. Tadros asserts that the sum total of evidence provided by Respondents in support of his removal within a reasonable time is that "ICE has been making efforts to facilitate Petitioner's removal to a country other than Egypt." *Id.* ¶ 8.

## II.     LEGAL FRAMEWORK

An individual who was granted deferral of removal cannot be removed to the country from which their removal has been deferred, 8 C.F.R. § 1208.17(a), unless such deferral is subsequently terminated by means of further legal proceedings, 8 C.F.R. § 1208.17(d). Such individual may be removed to any third country, but only if the government of such country "will accept the alien into that country[.]"  8 U.S.C. § 1231(b)(2)(E)(vii). Before such removal can take place, the government must provide the individual with notice and an opportunity to apply for protection as to that other country as well. *D.V.D.*, 2025 WL 1142968, at *24.

When an individual is ordered removed, 8 U.S.C. §1231(a) permits the government to detain them during the "removal period" which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). The removal period begins on the latest of three dates: (1)"[t]he date the order of removal becomes administratively final;" (2) if the removal order is judicially reviewed and the court orders a stay of removal, the date of the court's final order; and (3) "if the alien is detained or confined (except under an immigration context) the date the alien is released from detention or confinement." 8

4

U.S.C. § 1231(a)(1)(B)(i-iii). The 90-day removal period shall be extended, and the alien remain under detention only "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

### III.   ANALYSIS

Jurisdiction exists under 28 U.S.C. § 2241 "for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). In *Zadvydas*, the Government argued the post-removal detention statute, 8 U.S.C. § 1231(a)(6),[5] set no limit on the length of detention beyond the normal removal period. *Id.* at 689. The Court, "interpreting the statute to avoid a serious constitutional threat . . . conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court instructed habeas courts how to analyze such claims. *Id.* First, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* Reasonableness depends primarily on the statute's basic purpose of "assuring the alien's presence at the moment of removal." *Id.* Accordingly, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. When a habeas court grants relief "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the

---

[5] 8 U.S.C. § 1231(a)(6) Inadmissible or criminal aliens provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

5

circumstances." *Id.* at 700. The *Zadvydas* Court found it "necessary to recognize some presumptively reasonable period of detention" and decided upon six months. *Id.* at 701.

The Court provided further instruction to habeas courts:

> [a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

Respondents' argument that Tadros's habeas claim under *Zadvydas* is premature because he has not been detained for six months ignores that the facts in this case are distinguishable from *Zadvydas*. In *Zadvydas*, the petitioners remained in immigration detention beyond the 90-day removal period. *Id.* at 684-86. Tadros's original removal order became administratively final on April 7, 2009, but his removal was deferred under CAT, and he was released from ICE detention under supervision two days later. Cabezas Decl. ¶¶ 7, 8. Respondents have not identified any change in circumstances that caused them to place Tadros in custody in May 2025, while they pursue his removal to a third country.

Respondents contend Tadros is not entitled to habeas relief because his presumptively reasonable six-month detention period pursuant to *Zadvydas* began when he was detained on May 7, 2025. Answer at 21. To the contrary, Tadros argues his final order of removal triggered the six-month detention period under *Zadvydas*, and thus lapsed long ago. Petition ¶ 41. Tadros submits that the burden has shifted to the Government to show that removal is now likely in the reasonably

6

foreseeable future, and the Government has not met its burden. Reply Brief at 10-12. Additionally, Tadros contends 8 U.S.C. § 1231(a)(1)(C) is not implicated because he did not fail to cooperate with his removal. *Id.* at 12-15.

Tadros has the better argument under *Zadvydas*. The 90-day removal period under 8 U.S.C. § 1231(a)(1)(B) was triggered under the circumstances present here by the BIA's affirmance of the immigration judge's order of removal and deferral of removal under CAT on April 7, 2009. Tadros was released two days later. Cabezas Decl. ¶ 8. Tadros's release suggests he was determined not to present a flight risk, and that the Government was unlikely to find a third country to accept him in the reasonably foreseeable future. Furthermore, Tadros has demonstrated there is no significant likelihood of his removal in the reasonably foreseeable future because fifteen years have gone by without the Government securing a third country for his removal. Respondents' sole statement that "ICE has been making efforts to facilitate Petitioner's removal to a country other than Egypt" is insufficient to rebut the presumption established by Tadros. Cabezas Decl. ¶ 11. Additionally, Respondents have not established Tadros was taken into custody or remains in custody under 8 U.S.C. § 1231(a)(1)(C) for failing or refusing "to make timely application in good faith for travel or other documents necessary to the alien's departure." Respondents have not identified any country that has been willing to accept Tadros. Therefore, there are no travel or other documents to prepare for his departure. Thus, the Court will schedule a hearing and order Respondents[6] to appear and show cause why the petition for writ of habeas corpus should not be granted. Accordingly,

**IT IS**, on this 13th day of June 2025,

---

[6] One Respondent may appear on behalf of the Respondents named in the Petition.

7

**ORDERED** that the parties shall appear at a hearing on June 17, 2025 at 8:00 AM Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102, Courtroom 4C, and **SHOW CAUSE** why this Court should not grant Tadros's petition for writ of habeas corpus under 28 U.S.C. § 2241; and it is further

**ORDERED** that a Petition for Writ of Habeas Corpus ad testificandum shall issue to obtain Petitioner's appearance and testimony at the hearing; and it is further

**ORDERED** that the parties shall submit exhibit and witness lists on or before June 16, 2025, 10 AM; and it is further

**ORDERED** that, if the Court determines it necessary, the Court will schedule post-hearing briefing.

_____
Evelyn Padin, U.S.D.J.